UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 20-175-12(ABJ) |
| TREVON FAIRFAX | : |

**DEFENDANT'S MOTION FOR MISJOINDER
AND/OR FOR SEVERANCE**

Defendant, Trevon Fairfax, through undersigned counsel, Stephen F. Brennwald, Brennwald & Robertson, LLP, in support of his Motion for Misjoinder (Defendants and Offenses pursuant to Fed. R. Crim. P. 8(b)) and/or Motion to Sever (Defendants and Offenses pursuant to Fed. R. Crim. P. 14), states as follows:

*Procedural Background*

Mr. Trevon Fairfax, along with ten other men,[1] was indicted on April 20, 2021, and charged in Count One with Conspiracy to Distribute and Possess with the Intent to Distribute, Marijuana, Oxycodone, and Codeine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), 841(b)(1)(C), and 846; and in Count Two, with Conspiracy to Use, Carry, and Possess Firearms, Including a Machine Gun,

---

[1] While the indictment lists only eleven people, the numbering of the defendants in this Court's docket indicates that one person – presumably defendant "7," was indicted as well, though his name is not contained within the first page of the indictment. Additionally, the indictment references numerous unnamed co-conspirators. ECF Doc. 111.

in Furtherance of Crimes of Violence and Drug Trafficking Crimes, in violation of 18 U.S.C. §924. Mr. Fairfax was also indicted in Count Seven, which charges him with Discharging and Brandishing a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

Co-defendant Trenton Robinson is also charged in Count One and Count Two of the indictment, and is charged in Count Six with discharging a firearm in furtherance of a drug trafficking conspiracy, and in Count Eight with carrying and using a firearm (specifically, a machine gun) in furtherance of a drug trafficking conspiracy.

The similarities between Mr. Fairfax and Mr. Robinson's cases end there.

To explain, the indictment alleges that the eleven named defendants, as well as others known or unknown to the grand jury, conspired to sell drugs, to purchase from, or sell weapons to, each other or from others, and to use violence to protect their drug-selling operation. But the actual evidence laid out in the indictment presents two very different pictures with respect to Mr. Fairfax and Mr. Robinson.

In fact, very little is said in the indictment about Mr. Fairfax, who is only directly linked by the government to co-defendant Trenton Robinson, while Mr. Robinson is directly linked to each of the other named alleged co-conspirators.

Moreover, over the course of 73 alleged overt acts discussed in count 2 of the indictment (discussing the sale and purchase of guns), only two overt acts mention Mr. Fairfax.

The first overt act to mention Mr. Fairfax is overt act 68. This act claims that Mr. Fairfax fired a gun on April 12, 2020, into an oncoming vehicle. Mr. Robinson is charged with the same conduct in the same overt act. The second overt act to mention Mr. Fairfax is overt act 71, which states that on May 30, 2020, Mr. Fairfax was arrested in Montgomery County, Maryland, with a 9mm semi-automatic handgun with a magazine containing 20 rounds of ammunition, and $13,000 in cash.

Co-defendant Trenton Robinson, by contrast, is not only linked with Mr. Fairfax with respect to the shooting (and in a limited number of text messages discussing marijuana), but is also linked with every other co-defendant.

In addition, Mr. Robinson's name appears not in two overt acts, like Mr. Fairfax, but in 46 of the 73 overt acts.

The overt acts relating to Mr. Robinson allege that he and the other co-defendants (but not Mr. Fairfax) discussed, on many occasions over the course of about 15 months, purchasing or selling a total of 56 firearms.

In addition, while not specifically outlined in the indictment, it appears that the government's evidence concerning the drug conspiracy will link Mr. Robinson with almost every other defendant, whereas Mr. Fairfax is only linked, again, with Mr. Robinson.

*Argument*

Defendant Fairfax maintains that the indictment in this case misjoins him with the other defendants and counts in the indictment. For that reason, the case against him must be severed from the case against Mr. Robinson.

He further maintains that even if the counts and defendants are somehow properly joined, his case (as a defendant) and his Count (as an Offense) must be severed from the defendants and counts in the remainder of the indictment. Fed. R. Crim. P. 14.

Because he submits that he is entitled to be tried alone, and because the amount of evidence against him is not voluminous enough to necessitate any further exclusion of time under the Speedy Trial Act [of 1974, as amended],[2] he asks that this Court sever his case from that of Mr. Robinson, whose counsel (clearly) needs more time to prepare to represent Mr. Robinson at trial. Mr. Fairfax is no longer willing to waive any time under the Speedy Trial Act.

### a. *Misjoinder*

Federal Rule of Criminal Procedure 8(b) provides that:

> "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count."

---

[2] 18 U.S.C. § 3161(h)(7)(B)(ii).

Unlike Fed. R. Crim. P. 8(a), which impacts the misjoinder of *offenses*, rule 8(b) concerns the misjoinder of *defendants*, and thus obviously only applies in co-defendant cases.

As noted above, all of the defendants in this indictment except Mr. Fairfax allegedly bought and sold guns for, or to, each other.

While it is true that the government has alleged that Mr. Fairfax and Mr. Robinson were involved in a shooting, there will be no other credible evidence that, unlike Mr. Robinson, Mr. Fairfax worked with any of the other co-defendants to buy or sell weapons.

In *United States v. Brown*, 16 F.3d 423 (D.C. Cir. 1994), the Court held that "there was a misjoinder of firearms offenses under Rule 8(b)" even where evidence at one crime scene linked the defendant to weapons at another crime scene. The court explained that although the various charges were of a "same or similar character" – the standard applicable to the *joinder of offenses* under Fed. R. Crim. P. 8(a) – because Mr. Brown was indicted in a co-defendant case, and *joinder of co-defendants* is only permissible if the defendants' actions were part of the "same act or transaction," Mr. Brown likely would have prevailed on a misjoinder motion had he filed such a motion before trial.[3]  *Brown*, 16 F.3d at 429.

---

[3] The *Brown* court stated that

> "in this case of multiple defendants, even where the joinder of counts is at issue, Rule 8(b) applies. The distinction between Rules 8(a) and 8(b) is subtle but important because, as the government concedes, as a matter of law, that here "joinder was mistaken [under

Unfortunately for Mr. Brown, his attorneys did not file such a motion,[4] relying, instead, on a Rule 14 severance argument.[5]  And under a plain error review, the court could not conclude that Mr. Brown suffered "actual prejudice"[6] merely because he was tried with his co-defendant.  16 F.3d at 432.

As a famous jurist[7] once remarked,

> "[t]he question of the propriety of joinder under Rule 8 and of refusal to grant relief from prejudicial joinder under Rule 14 are quite different in nature.... The former is a question of law, subject to full appellate review.... In contrast, the grant of relief under Rule 14 lies within the discretion of the trial judge and refusal to sever counts or defendants properly joined under Rule 8 will be reversed only if discretion was abused."
>
> *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980) (footnote omitted).

The court in *Brown* explained that "if [a] defendant d[oes] not properly preserve the Rule 8 issue, or waive[d] the issue under Rule 12(f), we will not reverse a conviction, even if Rule 8 would not have permitted joinder, unless there

---

        Rule 8(b)], though it would have been proper under Rule 8(a), had [Brown's] case not been joined with codefendant Williams' case."

*Brown*, at 427-28 (*quoting* the Government's brief, at 16).

[4] *Brown*, 16 F.3d at 426.

[5] His attorneys casually referenced the misjoinder argument during argument on the severance motion, but the appellate court found that this was not sufficient to preserve the issue for appeal.

[6] *See Kotteakos v. United States*, 328 U.S. 750 (1946)(error involving misjoinder only requires reversal if defendant demonstrates actual prejudice).

[7] Judge Friendly, of the Second Circuit Court of Appeals in New York City.

is plain error resulting in actual prejudice to the defendant" (*citing* Fed. R. Crim. P. 52(b), and *comparing United States v. Lane*, 474 U.S. 438 (1986), which harmonized Rule 52(a)'s harmless error standard with Rule 8).

For these reasons, Mr. Fairfax files this motion relying not only on a Rule 14(a) severance argument, but on a Rule 8(b) argument. He maintains that the inclusion of the firearms count against him in the indictment alleging the existence of a vast drug and gun selling conspiracy perpetrated by every other defendant is the result of misjoinder under Rule 8(b), such that his case must be tried separately from the case against his co-defendants, and here, Mr. Robinson.

### b. *Severance Under Rule 14(a)*

Even if this Court were somehow to conclude that joinder was proper under these facts, defendant submits that his case should be severed from that of his co-defendants because of the unacceptable risk of prejudice he would suffer at trial given the disparity in the evidence against him and his co-defendants, including the spillover effect inherent in such a disparity.

Federal Rule of Criminal Procedure 14(a) provides that

> "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The District of Columbia Circuit Court of Appeals has held that severance is "requir[ed …] when the evidence against one or more of the defendants is 'far

more damaging' than evidence against the party seeking severance." *United States v. Sampol*, 636 F.2d 621, 645 (D.C. Cir., 1980).

Sampol was charged in a co-defendant case with misprision of a felony and making false statements. In contrast, his co-defendants were charged with conspiracy and murder. Because of the disparity in the charges and evidence, the D.C. Circuit held that the case against Sampol should have been severed from that against his co-defendants.

Commenting on the severance principles applied in *Sampol*, the D.C. Circuit, in *United States v. Tarantino*, explained that "[b]ecause of the quantity and inflammatory nature of the testimony against the co-defendants [in *Sampol*], the risk of a transference of their guilt was significant. Moreover, the testimony created a false impression that Sampol was involved in the conspiracy. *Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir., 1988).

This risk is very real in Mr. Fairfax's case because a jury hearing a vast amount of evidence against Mr. Robinson could easily, and falsely, conclude that he was somehow involved in their alleged conspiracy despite the absence of evidence of that claim.

This spillover effect exemplifies the flip side of the "disparity of evidence" coin. The spillover risk routinely surfaces in conspiracy cases, as, like here, there is often a disparity in the evidence against various defendants, and that very disparity can lead a juror to allow strong evidence against one or more defendants to "spillover" into the jury's consideration of another defendant's guilt.

This reality was recognized in *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986), where the Court stated: "Motions for severance are particularly sensitive in conspiracy cases because of the danger that the guilt of one defendant may be unjustly transferred to another." *Sutton*, 801 F.2d at 1363-64.

An earlier decision of the D.C. Circuit also acknowledged that "[t]he Supreme Court has recognized that when several people are tried together there is a danger that adverse evidence against some of the defendants will improperly rub off on the co-defendants." *McHale v. United States*, 398 F.2d 757, 758 (D.C. Cir. 1968).

Courts will attempt to offset this danger through particularized instructions, explaining to a jury, for example, that certain evidence may only be considered against a certain defendant. As the Supreme Court recognized, however, "[p]erhaps even at best the safeguards provided by clear rulings on admissibility, limitations of the bearing of evidence as against particular individuals, and adequate instructions, are insufficient to ward off the danger entirely."

*Blumenthal v. United States*, 332 U.S. 539, 559-560 (1947).

When even those safeguards are not enough to protect a defendant from this "spillover effect," severance, as seen in *Sampol*, must be granted.

It may be easiest to realize why severance is required in this case when one contrasts it with *United States v. Sutton*, 801 F.2d 1346 (D.C.Cir.1986). There, the D.C. Circuit held that "the trial judge did not abuse his discretion in denying a motion for severance when the charges required the 'presentation of much of the

same evidence, testimony of the same witnesses, and involve[d] two defendants who [were] charged, inter alia, with participating in the same illegal acts.'" 801 F.2d at 1365.

This rationale, which allowed the court to affirm Sutton's conviction, is not applicable here.

Defendant Fairfax, although accused of having participated in one specific event with Mr. Robinson on April 12, 2022, and of having texted Mr. Robinson several times, was not allegedly directly involved in the sale or purchase of any of the 56 weapons mentioned in the indictment as part of any broad conspiracy. His co-defendants, including Mr. Robinson, are all accused of having directly participated in a year-long conspiracy to sell three types of drugs, and fifty-six distinct weapons.

Because the disparity of the evidence against Mr. Fairfax and his co-defendant is too great, and presents too great a risk that the jury will allow evidence against Mr. Robinson to spill over into its consideration of the case against Mr. Fairfax, the defendants' cases should be severed for trial.

While there is an interest in joint trials in co-defendant cases, this interest in judicial economy cannot, and should not, outweigh a defendant's great interest in receiving a fair trial, when the consequences of an unfair trial are so severe.

For these reasons, the trial of the defendant, and the charges against him, should be severed from the trial of co-defendant Robinson.

Respectfully submitted,

/s/

_____
Stephen F. Brennwald, Esq.
Bar No. 398319
Brennwald Caleb & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C.  20003
(301) 928-7727
(202) 544-7626 (facsimile)
E-mail:  sfbrennwald@cs.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by ECF, this 25th day of July, 2022, to all counsel of record.

/s/

_____
Stephen F. Brennwald