UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 20-CR-175-12(ABJ) |
| : | |
| TREVON FAIRFAX, : | |
| also known as "Trizz," : | |
| : | |
| Defendant. : | |

## UNITED STATES' OPPOSITION TO DEFENDANT FAIRFAX'S MOTION FOR A PRELIMINARY DETERMINATION OF CONSPIRACY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Opposition to Defendant's "Motion for A Preliminary Determination of Conspiracy and Pretrial Ruling on the Admissibility of Evidence, Including Co-Conspirators' Statements Pursuant to Federal Rule of Evidence 801(d)(2)(E)." (hereinafter "Def. Motion") (Docket Entry 342).

## PROCEDURAL POSTURE

On February 7, 2020, Metropolitan Police Department (MPD) officers and Federal Bureau of Investigation ("FBI") special agents executed a search warrant at the residence of Terrance Phillips. Law enforcement encountered Phillips, Niko Culbreth, and a female in the apartment, and the ensuing search uncovered two loaded 9mm firearms, 138 total rounds of ammunition for 9mm, .40 caliber, and .45 caliber firearms, a Glock firearm box, and four cell phones. Phillips stated that he lived alone, and that everything in the apartment was his, and he was placed under arrest. Search incident to arrest, MPD officers recovered nineteen pills containing Oxycodone and $517 in small bills in Phillips' pockets.

Phillips was charged in Case Number 20-cr-36 with one count of being a Felon in Possession of a Firearm on February 11, 2020. FBI agents applied for, and received, a search

warrant to search the cell phones that were seized on February 7, 2020. In reviewing evidence from those cell phones, the agents uncovered separate conspiracies to distribute controlled substances and possess firearms in furtherance of that distribution, and identified Culbreth, Xavier Matthews, Naseem Roach, Trenton ROBINSON ("ROBINSON"), Victor Davis, and Steven Phillips, Jr., among others, as having been engaged with Phillips in the distribution of controlled substances and the possession, use, and carry of firearms in furtherance of their drug trafficking offenses.

On April 12, 2020, two men opened fire on a passing vehicle in the 1100 block of Trenton Place SE, which was the heart of the co-conspirators' drug-dealing territory. The shooting was captured on surveillance video footage. One of the shooters – later identified as ROBINSON – fired a fully-automatic AR-Pistol. After the shooting, the men entered a white BMW X5 Sports Utility Vehicle ("SUV") with Maryland license plate number 3EA-8816, and fled the scene. MPD issued a BOLO for that vehicle and license plate.

On May 30, 2020, MPD officers observed the white BMW X5 with Maryland license plate number 3EA-8816 and attempted to execute a traffic stop. The BMW X5 sped away and ultimately crashed, after which the driver fled on foot – abandoning the vehicle and its contents.  When officers arrived at the BMW X5, they observed an unserialized AR-Pistol and a cell phone inside. Law enforcement obtained a warrant to search that cell phone.

On September 1, 2020, a federal grand jury sitting in the District of Columbia returned an Indictment charging Phillips, Culbreth, Matthews, Roach, ROBINSON, Davis, and Phillips, Jr. with conspiring together and with others to distribute controlled substances and to possess, use, and carry of firearms in furtherance of their drug trafficking offenses. <u>United States v. Terrance Phillips, et. al</u>, Case No. 20-cr-175 (Docket Entry 1). In anticipation of that indictment, federal agents applied for and received warrants to search the residences of Culbreth, Roach, and

ROBINSON. The residence where Phillips, Jr. was arrested was searched with the written consent of the leaseholder. In total, federal agents seized seven cell phones, one Apple iPad, and one external hard drive during the execution of arrest and search warrants on September 1-2, 2020. Federal agents then applied for and received a search warrant, authorizing the search of those electronic devices.

In reviewing the evidence seized from those electronic devices, agents identified Andre Nickens, Daquon Wood, Anthony May, Trevon FAIRFAX ("FAIRFAX"), and Moataz Masoud, as participants in the charged conspiracies. Agents also identified FAIRFAX as the "second shooter" who, along with ROBINSON, opened fire on a passing vehicle on April 12, 2020. Thus, , agents applied for and received a warrant to search the cell phone that was seized from FAIRFAX by the Rockville (Maryland) Police Department when he was arrested there on May 30, 2020, while in possession of a handgun and $13,000 in cash.

On April 20, 2021, a federal grand jury sitting in the District of Columbia returned a Superseding Indictment adding Nickens, Wood, May, FAIRFAX, and Masoud to the Indictment and adding charges related to the shooting on April 12, 2020. Id. (Docket Entry 111).[1] Electronic devices were seized incident to the arrest Nickens, Wood, May, FAIRFAX, and Masoud.

Between April 19, 2021, and April 30, 2021, Phillips, Culbreth, ROBINSON, and Phillips, Jr. filed motions to suppress evidence. (Docket Entries 110, 129, 130, 132). The United States filed its opposition on May 21, 2021. (Docket Entry 145). Phillips and Phillips Jr. filed reply briefs. (Docket Entries 150, 165, 172). The Court held a suppression hearing on September 17, 2021, and ruled from the bench that the suppression motions filed by Culbreth and ROBINSON were denied,

---

[1] Matthews pleaded guilty on November 23, 2020, and was therefore not charged in the Superseding Indictment.

and the motions filed by Phillips and Phillips Jr. were denied in part and held in abeyance in part. The Court memorialized its rulings in writing. (Docket Entry 200).

The Court's ruling on the suppression motions led to a renewal of plea negotiations and Culbreth, Davis, Nickens, Wood, and Phillips, Jr. all pled guilty between November 1, 2021, and April 12, 202 – leaving Phillips, Roach, ROBINSON, May, FAIRFAX, and Masoud on the docket. On June 2, 2022, FAIRFAX appeared before the court for a Status Conference and informed the Court that he wished to reject the United States' plea offer and go to trial. Minute Entry, 6/2/22. On June 28, 2022, ROBINSON likewise appeared before the Court for a status conference and demanded a jury trial. Minute Entry, 6/28/22. Given the age of the case and the status of the docket, the Court ordered that ROBINSON and FAIRFAX would go to trial together at the first opportunity. On July 1, 2022, the Court issued a Scheduling Order establishing due dates for all necessary pretrial filings – including pretrial motions – and scheduling the trial to commence on October 3, 2022. (Docket Entry 332). The Scheduling Order was later modified to adjust the date for filing certain pretrial motions. Minute Entry, 7/13/22.

On July 25, 2022, FAIRFAX filed the instant motion for a pretrial hearing to determine the existence of a conspiracy. (Docket Entry 342). This opposition follows.

## **ARGUMENT**

Defendant argues that the Court must hold a pretrial hearing to determine the existence of the conspiracy before the United States can present evidence of co-conspirator statements or actions taken in furtherance of the conspiracy. Def. Motion, at 2-5. This argument is without merit.

Federal Rule of Evidence 801(d)(2)(E) authorizes the admission of an out-of-court statement "by a coconspirator of a party during the course and in furtherance of the conspiracy." Where a defendant objects to such an admission, however, the district court must find by a

preponderance of the evidence that a conspiracy existed and that the defendant and declarant were members of that conspiracy. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987). This determination is not constrained by the FEDERAL RULES OF EVIDENCE, however, and the can consider the proffered hearsay statements of the coconspirator to determine whether a conspiracy existed. Id.

The D.C. Circuit has instructed that, in a multi-defendant conspiracy such as this one, "[a] court can preliminarily admit hearsay statements of coconspirators, subject to connection through proof of conspiracy." United States v. Gewin, 471 F.3d 197, 201 (D.C. Cir. 2006), accord. United States v. Jackson, 627 F.2d 1198, 1216 (D.C. Cir. 1980) (approving procedure); see also United States v. Gantt, 617 F.2d 831, 845 (D.C. Cir. 1980) (same); United States v. Savoy, 889 F. Supp. 2d 78, 112 (D.D.C. 2012) (relying on Jackson, and stating that the Court "need not conduct a pretrial determination of the existence of a conspiracy to determine the admissibility of such statements"); United States v. Broadie, 326 F. Supp. 2d 83, 90 (D.D.C. 2004) (finding "a preliminary hearing would be immensely time-consuming and would unnecessarily delay the trial [and] [t]herefore, in accordance with the governing practice in this jurisdiction, denie[d] [the] defendants' motion and [] allow[ed] the admission of coconspirator statements at trial subject to proof of connection"); United States v. Edelin, 128 F. Supp. 2d 23, 45-46 (D.D.C. 2001) (holding that a "hearing to make an advance determination of conspiracy is unnecessary for the Court's determination by a preponderance of evidence that a conspiracy existed").

In spite of this longstanding precedent, Defendant requests a pretrial hearing and cites to the D.C. Circuit's opinion in Jackson as a basis. Def. Motion, at 3. Defendant's reliance on Jackson is somewhat curious given that the Jackson Court affirmed the exact practice of admitting co-

conspirator statements pursuant to FEDERAL RULE OF EVIDENCE 104(b) subject to later proof of a conspiracy. Jackson, 627 F.2d at 1219.

The Jackson court did, as Defendant notes, state that "the better practice is for the Court to determine before the hearsay evidence is admitted that the evidence independent of the hearsay testimony proves the existence of a conspiracy . . . ." Jackson, 627 F.2d at 1218. Defendant fails to note, however, that the next two sentences in the Jackson opinion modify that Court's interpretation of the "better practice" as follows:

> However, many times witnesses are in possession of both hearsay testimony of co-conspirators and evidence that independently tends to prove the existence of the conspiracy. Given the myriad of difficulties that surround the availability of witnesses, <u>it is just impractical in many cases for a court to comply strictly with the preferred order of proof</u> by taking the testimony of such witnesses piecemeal, waiting until a conspiracy is fully proved by independent evidence, and then recalling from their normal pursuits, those who testify to hearsay declarations of co-conspirators.

Id. at 1218 (emphasis added). Given those "practical impediments," Jackson held that the District Court may use its "considerable discretion to admit particular items of evidence subject to connection," to preliminarily permit the admission of the hearsay statements and to the extent necessary, and "strike the testimony" that has shown not to be made in furtherance of a conspiracy. Id. at 1218-19.

The First Circuit succinctly explained this practice in United States v. Correa-Osorio, 784 F.3d 11 (1st Cir. 2015).

> This is how that exception works. If a defendant contests the admissibility of an alleged coconspirator statement, the judge may conditionally admit the evidence and put off ruling until the close of all the evidence. Prosecutors must then prove by a preponderance of the evidence (apart from the statements themselves) the elements of admissibility under the exception— that the defendant and the speaker were coconspirators and that the speaker made the statement during the course and in furtherance of the conspiracy.... If prosecutors fall short, the defendant can ask the judge to declare a mistrial or strike the statements.

Id. at 23-24 (citations and quotations omitted). The rationale for admitting the statement based on proffered evidence subject to connection under Rule 104(b) is further bolstered by the law governing proving the conspiracy itself.  This is because courts apply a "liberal standard" in determining whether a statement was made in furtherance of a conspiracy. See, e.g., United States v. Lloyd, 807 F.3d 1128, 1161 (9th Cir. 2015) (keeping others informed of the conspiracy's activities); United States v. Siegelman, 640 F.3d 1159, 1181 (11th Cir. 2011) ("boasting or bragging is in furtherance of a conspiracy if the statements are directed at obtaining the confidence or allaying the suspicions of co-conspirators."

Given this precedential backdrop, the "[s]tandard practice in this district is to allow the government to admit coconspirator statements conditionally, subject to connection by the government at trial." United States v. Larrahondo, 885 F. Supp. 2d 209, 220 (D.D.C. 2012) (citations omitted).  Indeed, in United States v. Knowles, No. 12-266 (RWR), 2015 U.S. Dist. LEXIS 178210, at *6-9 (D.D.C. Dec. 30, 2015), the defendants raised virtually an identical argument as has been made before this Court, and Chief Judge Richard Roberts rejected it. While that opinion was unreported, its rationale is illustrative, as the defendants there raised the same argument as has been made here.

In Knowles, two co-defendants, who were charged with intent to distribute cocaine on board an aircraft registered in the United States, moved to suppress 180 audio recordings intercepted by a foreign law enforcement agency on the grounds the government would be unable to authenticate the recordings at trial, and that they constituted inadmissible hearsay. Id. at *2-3. More specifically, citing Jackson, they argued the recordings "hearsay and inadmissible without being connected up to the alleged conspiracy and found by the court, by independent evidence, to have been made in furtherance of and during the alleged conspiracy." Id. at *7 (internal quotation

omitted). In rejecting the defendants' argument, Chief Judge Roberts found their "reliance on Jackson is misplaced" for two reasons. Id. at *7.

First, the defendants failed to note that Jackson was decided before Bourjaily and the requirements prescribed in that decision by the Supreme Court.[2] Second, the defendants omitted Jackson's "subsequent discussion of the practical difficulties facing the better practice and the court's ultimate conclusion" that the statements were admissible "subject to connection." Id. at *7-8. Defendant's motion suffers from the same flaws, and recommends that this Court ignore three decades' worth of precedent and the standard practice in this district. See, e.g., Gewin, 471 F.3d at 201; Larrahondo, 885 F. Supp. 2d at 220.

Given the volume of digital evidence in this case, and the number of co-conspirator statements at issue, it would be impractical to assess each statement piecemeal to determine its admissibility. This piecemeal review would be particularly inefficient given that five of the charged co-conspirators have come before the court, admitted the existence of the charged conspiracies, and pled guilty for their conduct. (Docket Entries 221, 227, 230, 236, 298). Rather, in the interest of judicial economy, this court should follow the standard practice of admitting co-conspirator statements pursuant to Rule 104(b) subject to later proof of the conspiracy.

WHEREFORE, the United States respectfully requests that Defendant's "Motion for a Preliminary Determination of Conspiracy and Pretrial Ruling on the Admissibility of Evidence, Including Co-Conspirators' Statements Pursuant to Federal Rule of Evidence 801(d)(2)(E)." (Docket Entry 342) be DENIED.

---

[2] Defendant's reliance on United States v. James, 590 F.2d 575 (5th Cir. 1979) is similarly unavailing. Def. Motion, at 4. James which, like Jackson, predates Bourjaily, is neither binding on this Court nor persuasive here. As with Jackson, however, James also recognized the practice of admitting the statements "subject to being connected up" where a threshold determination was "not reasonably practical." James, 590 F.2d at 581-82.

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. BAR NO. 481052

By:    */s/ James B. Nelson*
                JAMES B. NELSON
                D.C. Bar No. 1613700
                Assistant United States Attorney
                Federal Major Crimes Section
                601D. Street, N.W.
                Washington, D.C. 20530
                (202) 252-6986
                james.nelson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

By:      */s/ James B. Nelson*
            JAMES B. NELSON
            D.C. Bar No. 1613700
            Assistant United States Attorney
            Federal Major Crimes Section
            601 D. Street, N.W.
            Washington, D.C. 20530
            (202) 252-6986
            james.nelson@usdoj.gov