**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 20-CR-175-12 (ABJ)** |
| | : | |
| **TREVON FAIRFAX,** | : | |
| **also known as "Trizz,"** | : | |
| | : | |
| **Defendant.** | : | |

<u>**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia and undersigned counsel, respectfully files this Opposition to Defendant's Motions to Suppress Evidence (Docket Entry 339) (hereinafter "<u>Def. Motion</u>").

<u>**PROCEDURAL POSTURE**</u>

On February 7, 2020, Metropolitan Police Department (MPD) officers and Federal Bureau of Investigation ("FBI") special agents executed a search warrant at the residence of Terrance Phillips. Law enforcement encountered Phillips, Niko Culbreth, and a female in the apartment, and the ensuing search uncovered two loaded 9mm firearms, 138 total rounds of ammunition for 9mm, .40 caliber, and .45 caliber firearms, a Glock firearm box, and four cell phones. Phillips stated that he lived alone, and that everything in the apartment was his, and he was placed under arrest. Search incident to arrest, MPD officers recovered nineteen pills containing Oxycodone and $517 in small bills in Phillips' pockets.

Phillips was charged in Case Number 20-cr-36 with one count of being a Felon in Possession of a Firearm on February 11, 2020. FBI agents applied for, and received, a search warrant to search the cell phones that were seized on February 7, 2020. In reviewing evidence from those cell phones, the agents uncovered separate conspiracies to distribute controlled substances

1

and possess firearms in furtherance of that distribution, and identified Culbreth, Xavier Matthews, Naseem Roach, Trenton ROBINSON ("ROBINSON"), Victor Davis, and Steven Phillips, Jr., among others, as having been engaged with Phillips in the distribution of controlled substances and the possession, use, and carry of firearms in furtherance of their drug trafficking offenses.

On April 12, 2020, two men opened fire on a passing vehicle in the 1100 block of Trenton Place SE, which was the heart of the co-conspirators' drug-dealing territory. The shooting was captured on surveillance video footage. One of the shooters – later identified as ROBINSON – fired a fully-automatic AR-Pistol. After the shooting, the men entered a white BMW X5 Sports Utility Vehicle ("SUV") with Maryland license plate number 3EA-8816, and fled the scene. MPD issued a BOLO for that vehicle and license plate.

On May 30, 2020, MPD officers observed the white BMW X5 with Maryland license plate number 3EA-8816 and attempted to execute a traffic stop. The BMW X5 sped away and ultimately crashed, after which the driver fled on foot – abandoning the vehicle and its contents. When officers arrived at the BMW X5, they observed an unserialized AR-Pistol and a cell phone inside. Law enforcement obtained a warrant to search that cell phone.

Also on May 30, 2020, Rockville (Maryland) Police Department officers conducted a traffic stop of a vehicle for traveling more than the speed limit.[1]  Upon approaching the vehicle, the officer noticed a strong smell of raw marijuana and asked the driver and front passenger to exit the vehicle and sit on the curb. Although initially reluctant to comply, the front passenger – later identified as Defendant Trevon FAIRFAX – grabbed a backpack from the floorboard of the car, went to the curb, and provided a false name and birthdate to officers. As two officers were searched

---

[1] The United States' recitation of facts is drawn from the Incident Report authored by Corporal Van Fossen.

the vehicle[2] – recovering two cell phones and a digital scale – two other officers were speaking with Defendant. At that point he got up, started backing away, and then began to flee on foot. While running, Defendant slipped and fell, and the officers caught up with him. Defendant then began physically resisting officers and attempted to fight his way free. Officers were eventually able to handcuff Defendant, at which point he was informed that he was under arrest and his Miranda rights were read. Search incident to arrest, officers discovered a Glock, Model 17, 9mm semi-automatic handgun loaded with 20 rounds of ammunition in a 30-round, high-capacity magazine and $13,000 cash inside the backpack. During the search, Defendant inquired "why are you searching my backpack."

On September 1, 2020, a federal grand jury sitting in the District of Columbia returned an Indictment charging Phillips, Culbreth, Matthews, Roach, ROBINSON, Davis, and Phillips, Jr. with conspiring together and with others to distribute controlled substances and to possess, use, and carry of firearms in furtherance of their drug trafficking offenses. United States v. Terrance Phillips, et. al, Case No. 20-cr-175 (Docket Entry 1). In anticipation of that indictment, federal agents applied for and received warrants to search the residences of Culbreth, Roach, and ROBINSON. The residence where Phillips, Jr. was arrested was searched with the written consent of the leaseholder. In total, federal agents seized seven cell phones, one Apple iPad, and one external hard drive during the execution of arrest and search warrants on September 1-2, 2020. Federal agents then applied for and received a search warrant, authorizing the search of those electronic devices.

---

[2] Corporal Van Fossen's report of this incident notes that a drug detection K9 was called to the scene, at which point the K9 officer inspected the vehicle and "alerted" to the presence of narcotics in the vehicle. From the report, it is not clear when in the chain of events this K9 alert took place.

In reviewing the evidence seized from those electronic devices, agents identified Andre Nickens, Daquon Wood, Anthony May, FAIRFAX, and Moataz Masoud, as participants in the charged conspiracies. Agents also identified FAIRFAX as the "second shooter" who, along with ROBINSON, opened fire on a passing vehicle on April 12, 2020. Thus, agents applied for and received a warrant to search the cell phone that was seized from FAIRFAX by the Rockville (Maryland) Police Department when he was arrested there on May 30, 2020, while in possession of a handgun and $13,000 in cash.[3]

On April 20, 2021, a federal grand jury sitting in the District of Columbia returned a Superseding Indictment adding Nickens, Wood, May, FAIRFAX, and Masoud to the Indictment and adding charges related to the shooting on April 12, 2020. Id. (Docket Entry 111).[4] Electronic devices were seized incident to the arrest Nickens, Wood, May, FAIRFAX, and Masoud.

Between April 19, 2021, and April 30, 2021, Phillips, Culbreth, ROBINSON, and Phillips, Jr. filed motions to suppress evidence. (Docket Entries 110, 129, 130, 132). The United States filed its opposition on May 21, 2021. (Docket Entry 145). Phillips and Phillips Jr. filed reply briefs. (Docket Entries 150, 165, 172). The Court held a suppression hearing on September 17, 2021, and ruled from the bench that the suppression motions filed by Culbreth and ROBINSON were denied, and the motions filed by Phillips and Phillips Jr. were denied in part and held in abeyance in part. The Court memorialized its rulings in writing. (Docket Entry 200).

The Court's ruling on the suppression motions led to a renewal of plea negotiations and Culbreth, Davis, Nickens, Wood, and Phillips, Jr. all pled guilty between November 1, 2021, and

---

[3] As discussed below, prior to the federal warrant being issued, Rockville Police Department officers applied for and received a search warrant for the phone as part of the prosecution in Montgomery County, Maryland.

[4] Matthews pleaded guilty on November 23, 2020, and was therefore not charged in the Superseding Indictment.

April 12, 202 – leaving Phillips, Roach, ROBINSON, May, FAIRFAX, and Masoud on the docket. On June 2, 2022, FAIRFAX appeared before the court for a Status Conference and informed the Court that he wished to reject the United States' plea offer and go to trial. Minute Entry, 6/2/22. On June 28, 2022, ROBINSON likewise appeared before the Court for a status conference and demanded a jury trial. Minute Entry, 6/28/22. Given the age of the case and the status of the docket, the Court ordered that ROBINSON and FAIRFAX would go to trial together at the first opportunity. On July 1, 2022, the Court issued a Scheduling Order establishing due dates for all necessary pretrial filings – including pretrial motions – and scheduling the trial to commence on October 3, 2022. (Docket Entry 332). The Scheduling Order was later modified to adjust the date for filing certain pretrial motions. Minute Entry, 7/13/22.

On July 20, 2022, FAIRFAX filed the instant motion to suppress evidence. (Docket Entry 339).  This opposition follows.

## ARGUMENT

### I.  DEFENDANT LACKS STANDING TO CHALLENGE THE SEARCH OF HIS CO-DEFENDANTS' HOMES AND CELL PHONES

As noted above, the investigation which led to Defendant's inclusion in the Superseding Indictment originated with the search of the cell phones seized from Phillips which, in turn, led to the seizure and search of cell phones and other electronic devices from Culbreth, Roach, ROBINSON, and Phillips, Jr.  Defendant now seeks to suppress any evidence from those electronic devices, and prevent that evidence form being offered in in his trial. Def. Motion, at 9.

As an initial matter, the United States notes that the docket indicates that this issue portion of Defendant's motion has already been heard and denied by the Court. Order (Docket Entry 200, at 1, 3). However, in the abundance of caution, the United States will re-brief the issue.

It is well settled that "[t]he Fourth Amendment protects the people against unreasonable

searches of '<u>their</u>' effects, and an accused in a criminal case may not assert the Fourth Amendment rights of a third party. <u>United States v. Stringer</u>, 739 F.3d 391, 396 (2014) (citing <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104-06 (1980); <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-38 (1978) (emphasis added)).   Consequently, an accused has no standing to challenge a search unless he can "first establish that he personally has a legitimate expectation of privacy in the object that was searched." <u>Id</u>.

Defendant has provided no basis from which this Court might determine that he had a reasonable expectation of privacy in his co-defendant's apartments or cell phones.  Nor could he, given that he neither lived with them nor possessed and used their cell phones. That Defendant, with the benefit of hindsight, wishes that his criminal compatriots would have been more discreet with their incriminating text messages is of no Constitutional moment.  Defendant's suggestion that evidence seized from his co-defendants' electronic devices cannot be used against him is without legal merit.

## II.   DEFENDANT HAS NO LEGAL BASIS TO CHALLENGE THE SEIZURE OF HIS CELL PHONE ON MAY 30, 2020

Defendant spends the bulk of his motion challenging the traffic stop on May 30, 2020, which resulted in the seizure of his cell phone. <u>Def. Motion</u>, at 6-9. Respectfully, this challenge is not properly before the Court – Defendant waived his Fourth Amendment challenges regarding the traffic stop by entering and unconditional guilty plea.

On May 30, 2020, 48 days after he and ROBINSON opened fire on a passing car in the 1100 block of Trenton Place SE, and well within the time period of the charged conspiracies, Defendant was arrested in Rockville, Maryland, with a loaded handgun and $13,000 cash in a vehicle that a drug-detection K9 "alerted" to as containing controlled substances.  Following  his arrest, Defendant was charged by criminal complaint with one felony and six misdemeanor

offenses and detained without bond pending trial. <u>Maryland v. Fairfax</u>, Case No. 5D0040966.

On June 25, 2020, a grand jury sitting in Montgomery County, Maryland, returned an Indictment and Defendant's case was transferred to Montgomery County Circuit Court. <u>Maryland v. Fairfax</u>, Case No. 137394C. On October 13, 2020, Defendant filed a motion to suppress the evidence seized during the traffic stop. Approximately two weeks later, on November 2, 2020, Defendant, through counsel, notified the Court that a plea agreement had been reached and that Defendant was abandoning his suppression motion. On December 9, 2020, Defendant entered an unconditional guilty plea to Unlawful Possession of a Regulated Firearm by a Convicted Felon. That same day, Defendant was sentenced to a term of five years' incarceration, of which all-but 193 days were suspended.

"As the D.C. Circuit has observed, '[a] knowing and voluntary guilty plea ordinarily waives all constitutional claims, including those arising under the Fourth Amendment, relating to the deprivation of rights occurring prior to the entry of the plea.'" <u>United States v. Flynn</u>, 411 F. Supp. 3d 15, 48 (D.D.C. 2019) (quoting <u>United States v. Fincham</u>, No. 99-3062, 2000 WL 274210, at *1 (D.C. Cir. Feb. 15, 2000)); <u>see</u> <u>also</u> <u>United States v. Magruder</u>, No. CR 19-203 (CKK), 2021 WL 5769462, at *10 (D.D.C. Dec. 6, 2021). "By entering an unconditional guilty plea, [defendant] waived his right to object to the constitutionality of the search and seizure." <u>Fincham</u>, 2000 WL 274210, at *1 (citing <u>United States v. Drew</u>, 200 F.3d 871, 876 (D.C. Cir. 2000) (noting that the only exception to the waiver rule is an allegation that the crime to which defendant pleaded guilty is unconstitutional on its face); <u>United States v. Arango</u>, 966 F.2d 64, 66 (2d Cir. 1992)).

Defendant had the opportunity to challenge the seizure of his cell phone in the resulting criminal case before a court with jurisdiction over the seizure – indeed, Defendant filed just such a motion after receiving discovery in that case. Rather than pursue his suppression motion,

Defendant, with the advice of counsel, chose to abandon that claim in favor of an unconditional guilty plea which forever waived any fourth amendment claim he had regarding the seizure on May 30, 2020. The law does not permit Defendant a jurisprudential "do over" on this issue, simply because he would prefer a second bite at the apple.[5]

III.   **THE CELL PHONE SEIZED FROM DEFENDANT ON MAY 30, 2020, WAS PROPERY SEARCHED PURSUANT TO A SEARCH WARRANT**

That Defendant has waived his right to challenge the seizure of the cell phone does not end the inquiry, however, because cell phones may not be searched absent a valid search warrant. Riley v. California, 573 U.S. 373, 393-403 (2014). Federal agents searched Defendant's cell phone pursuant to Search Warrant 20-SW-310 (Exhibit One). As noted more fully below, 20-SW-310 satisfied all the constitutional requirements for a search warrant and the agents were entitled to rely on it in searching Defendant's cell phone. Thus, Defendant's motion to suppress must fail.

A.   **STANDARD OF LAW**

1.   **Probable Cause**

The Fourth Amendment requires that search warrants be supported by probable cause and state with particularity the places that will be searched and the things that will be seized. U.S. CONST. AMEND. IV. "The law is clear that an affidavit in support of a warrant application 'must provide the magistrate with a substantial basis for determining the existence of probable cause,' and it cannot consist of 'wholly conclusory statement[s].'" United States v. Manafort, 314 F. Supp.

---

[5] Even if the Court were to somehow conclude that Defendant had not waived his right to challenge the seizure, his motion would still fail because Defendant abandoned his cell phone when he left it in the car and attempting to flee from police on foot. United States v. Most, 876 F.2d 191, 196 (D.C. Cir. 1989) (citing Abel v. United States, 362 U.S. 217, 241 (1960)); see also United States v. Falsey, 566 F. App'x 864, 867 (11th Cir. 2014); United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir. 1994); United States v. Thomas, 864 F.2d 843, 845 (D.C.Cir.1989); United States v. Colbert, 474 F.2d 174 (5th Cir. 1973). Defendant himself admits to trying to flee on foot while his phone was still in the car. Def. Motion, at 6.

3d 258, 266 (D.D.C. 2018) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 239 (1983)). "The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure." <u>Id</u>. at 263 (citing <u>Rakas v. Illinois</u>, 439 U.S. 128, 130 n.1 (1978)).

"'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" <u>Gates</u>, 462 U.S. at 231 (quoting <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949)). As <u>Gates</u> reiterated, "'[t]he process does not deal with hard certainties, but with probabilities. . . [or] common-sense conclusions about human behavior[.]'" <u>Id</u>. (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 418 (1981)); <u>see also</u> <u>United States v. Dixon</u>, 787 F.3d 55, 60 (1st Cir. 2015) (holding that a search warrant affidavit was sufficient, even though it "contained no observations of [defendant] engaging in other activities deemed to be drug related in or in the vicinity of" his apartment[,]" because probable cause "requires only a 'fair probability'—not certainty—that evidence of a crime will be found in a particular location.")

## 2.    <u>Particularity/Overbreadth</u>

Even if a search warrant is supported by probable cause, it will not pass Constitutional muster if it does not describe, with particularity, the location of the search and the things to be searched for and seized. <u>Groh v. Ramirez</u>, 540 U.S. 551, 557-65 (2004).  The particularity requirement not only prevents against general searches, but also ensures the person being searched that the officer is possessed of lawful authority to conduct the search. <u>See</u>, <u>e.g.</u>, <u>Maryland v. Garrison</u>, 480 U.S. 79, 84 (1987); <u>Marron v. United States</u>, 275 U.S. 192, 196 (1927). "'Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must

clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" Manafort, 314 F. Supp. 3d at 263-64 (quoting United States v. Hill, 459 F.3d 966, 973 (9th Cir. 2006); United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993)).

Notwithstanding the particularity requirement, warrants authorizing the search of electronic data are not "overbroad" simply because they allow law enforcement to search the entirety of that data for evidence of a specified criminal offense.  See United States v. Williams, 592 F.3d 511, 521-23 (4th Cir. 2010) (noting that "the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents"); see also United States v. Skinner, 2021 WL 1725543, at **15-16 (E.D. Va. 2021); United States v. Karrer, 260 Fed. App'x 157, 161 (3d Cir. 2012) (citations omitted). Moreover, when executing such a warrant, law enforcement is entitled to seize evidence of non-specified criminal activity that is observed in "plain view" while searching for evidence of specified criminal activity. Williams, 592 F.3d at 521-23 (citing Horton v. California; 496 U.S. 128, 136 (1990); Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976)); Karrer, 260 Fed. App'x. at 163-64 (citing Horton, 496 U.S. at 141; United States v. Stabile, 633 F.3d 219, 240-42 (3d Cir. 2011); United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994)).

### 3.   Standard of Review for Judicially Authorized Search Warrants

The "'task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that . . . evidence of a crime will be found in a particular place.'" Manafort, 314 F. Supp. 3d at 266 (quoting Gates, 462 U.S. at 238); see also United States v. McCormick, Case No. 18-359-4, 2019 WL 3718944, at *2 (D.D.C. Aug. 7, 2019); United States v. Ali, 870 F. Supp. 2d 10, 25 (D.D.C.

2012). On review, the magistrate's probable cause determination is entitled to "great deference." United States v. Spencer, 530 F.3d 1003, 1006 (D.C. Cir. 2008) (citing Gates, 462 U.S. at 236).

The Supreme Court has long held that such deference encourages officers to seek a warrant prior to executing a search. United States v Ventresca, 380 U.S. 102, 105-06 (1965) (noting that "the deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried actions of officers.")  As the D.C. Circuit has held, "[e]ven if we disagree with the judge's probable-cause determination after giving it 'great deference,' that disagreement alone does not justify exclusion of evidence. That is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.'" Spencer, 530 F.3d at 93 (quoting Massachusetts v. Sheppard, 468 U.S. 981, 990, (1984)). Thus, the duty of a reviewing court "'is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" Ali, 870 F. Supp. 2d at 25 (quoting Gates, 462 U.S. at 238–39).

### 4.       Good Faith Reliance on a Search Warrant

It is well established that law enforcement is entitled to rely on a magistrate's probable cause determination. United States v. Leon, 468 U.S. 897, 921 (1984). It is equally well established that "an officer cannot be expected to question the magistrate's probable-cause determination. . . ." Id., quoted in Spencer, 530 F.3d at 1006; see also United States v. Maxwell, 920 F.2d 1028, 1034 (D.C. Cir. 1990). As such, "[s]o long as the officer relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule." Spencer, 530 F.3d at 1006-07. The Spencer Court noted that "the 'degree of police deference to the magistrate which is perceived by courts as reasonable under Leon exceeds significantly that 'great deference' owed the magistrate by reviewing courts under Gates.'" Id. at 1007 (quoting 1 Wayne R. Lafave, SEARCH AND SEIZURE § 1.3(f), at 97–98 (4th ed.2004) (footnote omitted). In short,

11

police officers are "entitled to presume that the magistrate knows what he is doing." Id.

In cases where law enforcement relies on a warrant that is later determined to lack probable cause, the reviewing court must balance the deterrent value of excluding evidence against the fact that such exclusion unacceptably impedes the Court's truth-finding functions. Leon, 468 U.S. at 907; United States v. Payner, 447 U.S. 727, 734 (1980); Stone v. Powell, 428 U.S. 465, 490 (1976). As Judge Huvelle noted in Ali:

> When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and "exclusion cannot pay its way."

870 F. Supp. 2d at 24 (citing Davis v. United States, 564 U.S. 229, 237-40 (2011); Herring v. United States, 555 U.S. 135, 144 (2009), and quoting Leon, 468 U.S. at 908 n. 6). Consequently, the reviewing court must determine the objective reasonableness of the officers' reliance by considering "'whether a reasonably well-trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" Id. (quoting Herring, 555 U.S. at 145; Leon, 468 U.S. at 922 n.23). As this Court has recognized, "[t]his good faith exception to the exclusionary rule applies not only when a reviewing court concludes that the affidavit in support of the warrant lacked probable cause, but also to warrant is later found to be overbroad." Manafort, 313 F. Supp. 3d at 236.

## B.   **Search Warrant 20-SW-310 Satisfies All Constitutional Requirements**

Search Warrant 20-SW-310 specifically identifies the item to be searched – the cell phone seized from Defendant on May 30, 2020. Exhibit One, at 4, 7.  The affidavit also specifically identifies what law enforcement was authorized to seize – evidence that Defendant had violated 21 U.S.C. § 841(a)(1) or 18 U.S.C. § 924(c). Id. at pg. 5-7. This satisfies the particularity

requirement. Groh, 540 U.S. at 557-65.  Moreover, even if this Court were to determine that the warrant is overbroad, law enforcement was entitled to rely on the issuance of the warrant in good faith.  Leon, 468 U.S. at 921; Manafort, 313 F. Supp. 3d at 236.

Search warrant 20-SW-310 is also supported by probable cause. The affidavit first recounts the initial investigation into shooting on the 1100 block of Trenton Place SE on April 12, 2020, and the subsequent identification of ROBINSON and Defendant as the two shooters. Id. at 17 ¶¶ 16-18. The affidavit then outlined the police chase of ROBINSON's BMW SUV on May 30, 2020 — which ended in the vehicle crashing and the driver escaping on foot — which resulted in the seizure of an AR-Pistol and a cellular telephone. Id. at 17-18, ¶¶ 19-20. The affidavit further noted that the AR-Pistol recovered from that vehicle matched shell casings from the scene of the shooting on April 12, 2020. Id. at 18, ¶ 21. Next the affidavit details the warranted search of ROBINSON's Instagram account, and identifies a sampling of conversations between Defendant and ROBINSON regarding the distribution of controlled substances. Id. at 18-21, ¶¶ 22-29. Finally, the affidavit outlines the traffic stop which led to Defendant's arrest and the seizure of his cell phone – including the fact that Rockville City Police Department officers applied for and received a warrant to search the phone. Id. at 21-23, 30-37. The affidavit concludes with another description of the types of evidence that would be obtained pursuant to the warrant. Id. at 24, ¶ 40.  This evidence satisfies the probable cause requirement.  Gates, 462 U.S. at 231; Brinegar, 338 U.S. at 176.  Moreover, even if this Court were to determine that the warrant is not supported by probable cause, law enforcement was entitled to rely on the issuance of the warrant in good faith.  Leon, 468 U.S. at 921; Manafort, 313 F. Supp. 3d at 236.

## IV.    <u>**DEFENDANT'S MOTION DOES NOT MERIT AN EVIDENTIARY HEARING**</u>

Notwithstanding the contention in Defendant's motion, the act of filing of a suppression motion does not automatically entitle a criminal defendant to an evidentiary hearing. As Chief Judge Howell has noted, "it is a 'normal process' for a court to review the legal sufficiency of an affidavit to support probable cause without an evidentiary hearing." <u>United States v. Bikundi</u>, 125 F. Supp. 3d 178, 190 (D.D.C. 2015) (citing <u>Massachusetts v. Upton</u>, 466 U.S. 727, 728 (1984); <u>United States v. Matthews</u>, 753 F.3d 1421, 1326-27 (D.C. Cir. 2014)).  Here, Defendant's sole basis for suppressing the seized cell phone rests on a claim that he waived as a matter of law. Defendant proffers no challenge at all to the search warrant itself, let alone a challenge that would benefit from the admission of testimony during an evidentiary hearing.

## <u>CONCLUSION</u>

Defendant has waived the right to challenge the seizure of his cell phone on May 30, 2020, and the subsequent search of that phone was conducted pursuant to a judicially authorized search warrant.  That warrant was supported by probable cause and satisfied the particularity requirement. Even if this Court were to decide, upon review of the warrant, that it was overbroad or lacked sufficient probable cause, the agents were entitled to rely on those warrants in good faith.  Finally, Defendant's motion fails to raise a factual dispute that would give rise to an evidentiary hearing

WHEREFORE, the United States respectfully requests that Defendant's Motion to Suppress Evidence (Docket Entry 339) be DENIED without a hearing.

///   ///   ///

///   ///   ///

///   ///   ///

///   ///   ///

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. BAR NO. 481052

By:      */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

By:        */s/  James B. Nelson*
                  JAMES B. NELSON
                  D.C. Bar No. 1613700
                  Assistant United States Attorney
                  Federal Major Crimes Section
                  601 D. Street, N.W.
                  Washington, D.C. 20530
                  (202) 252-6986
                  james.nelson@usdoj.gov