IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| STATE OF MARYLAND | : | |
| vs. | : | Case No. 137394-C |
| TREVON A. FAIRFAX | : | |
| Defendant | : | |

## MOTION TO SUPPRESS EVIDENCE & MEMORANDUM OF LAW [REQUEST FOR HEARING OCTOBER 22, 2020 9:30 am]

Comes Now the Defendant, Trevon A. Fairfax, by and through his attorney, James N Papirmeister, Esq. of the Law Offices of James N. Papirmeister, P.C., and hereby respectfully submits this Motion and Memorandum of Law, to suppress the firearm and cash seized in this case during a traffic stop and warrantless arrest of Mr. Fairfax, <u>and hereby requests a hearing be held on this Motion at the date and time designated in the scheduling order in this case, namely October 22, 2020 at 9:30 am,</u> and in support thereof states as follows.

## FACTUAL BACKGROUND

[Preliminarily, we mention that the Body Worn Camera footage (BWC's) of two of the involved officers, as well as a dash cam video, provide a fairly

complete depiction of the traffic stop, the conversations between officers and the front seat passenger, Mr. Fairfax, as well as the driver of the vehicle in question. The BWC's also depict the exits from the vehicle of the driver and Mr. Fairfax, and the ensuing searches and arrest and further search. Once a Motions Judge is designated, we would like to email the relevant BWC and dash cam clips via dropbox, and/or deliver a flash drive containing them for review by the Court prior to the Motions hearing].

On May 30, 2020 at approximately 11 pm a Rockville City Police officer named Brian Vanfossen observed a dark sedan with tinted windows traveling on Maryland Avenue and determined that the vehicle was traveling 38 mph in a posted 30 mile an hour zone. The officer then observed the vehicle reduce its speed down to 33 miles an hour and continue at that this speed, even when the speed limit changed to 25 mph. The officer then activated his emergency equipment, the vehicle made a right turn onto Fleet Street, and then it came to a stop. [Based on the undersigned's viewing of dash camera footage, the vehicle passed the roadside speed monitor on Maryland Avenue which revealed that the vehicle was going 29 or 30 mph, both of which numbers were displayed on that device as the vehicle passed it, as depicted in the dash cam].

At that time, the officer approached the vehicle and tapped on the driver's side rear quarter panel twice, and said "Put your fuckin window down!" Within three seconds, the female in the driver's seat, later identified as Alexis Dillard, put the driver's window down about halfway. The officer collected Ms. Dillard's driver's license and the vehicle registration, which indicated that the vehicle was registered to someone she later identified as her grandfather.

Officer Van Fossen then returned to his cruiser and called in to run the driver's license and registration through various databases. Various responses were heard on the police communications system, indicating that the driver's license was valid, the vehicle registration was valid, and a computerized voice was heard saying "NCIC Clear," indicating no open warrants.

A back-up officer, Christopher Sadelson, arrives and while officer Vanfossen is seated in his cruiser, he explains to him the basis of his stop of the vehicle. He says to officer Sadelson that he smelled the odor of marijuana, the very strong odor of air freshener, and that the driver was "super slow" to pull to a stop when he activated his emergency equipment. [This was not evident to the undersigned when viewing the dash cam video of the traffic stop].

Officer Vanfossen then exited his cruiser and approached the driver's side of the vehicle again, this time with officer Sadelson approaching the passenger

side.  Vanfossen asks the driver "When's the last time you had marijuana in the car"?  The driver denied ever having marijuana in the car as did Mr. Fairfax who was seated in the front passenger seat.

Vanfossen then tells the driver and Mr. Fairfax that he is going to have them both step out of the vehicle and that the vehicle is going to be searched. Ms. Dillard says "it's a traffic stop, though". Vanfossen explains he has probable cause to search the vehicle because he smells marijuana, and he is not going to debate about it, and that they will have to exit the vehicle, one by one.   He then tells Ms. Dillard to exit first, which she does, and directs her to sit on the curb in front of her vehicle, with which she complies.

Mr. Fairfax is then told to exit from the front passenger seat. As Mr. Fairfax exits,  he is holding a backpack, which officer Van Fossen claimed to another officer later in his BWC video, he had first seen right at Mr. Fairfax's feet on the front passenger floorboard. [It appears to the undersigned from officer Sadelson's BWC footage, that as Mr. Fairfax was about to exit the vehicle, he already had the backpack on his lap].

As he steps out holding the backpack, being directed to walk to the front of the vehicle where driver Alexis Dillard was, Mr. Fairfax is told by Vanfossen "you can leave your bag here". Mr. Fairfax replies "this my bag" and proceeds

4

to walk as directed to the curb and places the backpack on his back. Officer Sadelson then says, "take your bag off," to which Mr. Fairfax responds by asking why. Officer Sadelson replies that we smell marijuana in the car and "we're searching you and your bag". Mr. Fairfax says he could not possibly smell marijuana in the car because there is none, and pointed out that the officer was wearing a mask. Mr. Fairfax tells the officers they have no right to do what they are doing. Officer Vanfossen then says "It's called a pretextual stop". Officer Sadelson then calls dispatch requesting a female officer to conduct a search, two additional officers to conduct another search, and a Sgt. to respond to the scene.

Officer Sadleson, who was guarding Mr. Fairfax seated on the curb, asked him for his name. Mr. Fairfax gave his name as "Seth Owens" and a date of birth which was later with the name, discovered to be a false name and date of birth, but that falsity was not known at the time. Meanwhile, after the female officer arrives, Ms. Dillard stood up from her seated position on the curb and was texting on her phone. She initially ignored the repeated requests of officer Vanfossen to sit back down on the curb. She started to walk away and officer Vanfossen and the female officer stopped her and Vanfossen told her she "was not free to leave". She subsequently complied and sat back down on the curb. Officer Sadelson then directed the female officer to search Ms. Dillard first,

because she was the driver, and then referring to Mr. Fairfax, said he would be searched next. There were a number of places in the BWC videos of both Vanfossen and Sadelson where each specifically stated to other officers as well as the two occupants, that they were each going to be "searched".

The female officer then began to frisk Ms. Dillard, as she assumed the position of having her back to the officer, with her hands up in the air, and the officer is seen on Sadelson's BWC to be patting her down.

Officer Vanfossen meanwhile was searching the vehicle. While Vanfossen was searching the vehicle, and while the female officer was frisking Ms. Dillard, officer Sadelson and another officer who were guarding Mr. Fairfax, asked him to stand up so they could search him and his backpack. Mr. Fairfax stood up, with his backpack still strapped to his back, and asked the officers why they were doing this and he began to back pedal away from the officers and tried to get away. The two officers quickly apprehended him, joined by officer Vanfossen. The three officers tackled Mr. Fairfax to the ground, a short struggle ensued and he was forcibly handcuffed and told he was under arrest. Mr. Fairfax's whole body and pockets were searched and his backpack was searched.

In the backpack was a 9 mm handgun with a magazine that contained 20 rounds of ammunition, and $13,000 in US currency. An additional $270 in US currency was found in Mr. Fairfax's pocket. The $13,000 was wrapped in 13 separate groups of $1000 each, in black rubber bands. It is all these items this Motion seeks to suppress.

Mr. Fairfax has now been Indicted, for possession of a firearm by convicted felon and related firearms charges, but no drug-related charges were filed, as no marijuana, nor any drugs were ever found, in a search of his person, the backpack, Ms. Dillard, or the vehicle.

<u>THRESHOLD ISSUE: THE TRAFFIC STOP WAS ILLEGAL</u>

The location of the traffic stop in this case is not far from our District and Circuit Courts in Rockville. It was 11 o'clock at night and the vehicle in question was seen purportedly traveling 38 miles an hour in a 30 mph zone, and reduced its speed to 33 mph. As set forth above, the roadside speed monitor, which has been set up for years on Maryland Avenue, revealed in the dash cam footage, that the vehicle in question was going 29 and 30 mph. It then appears in the dash cam, to be reducing its speed below 29 mph as the officer activates his emergency equipment. It is not evident this vehicle was speeding at all. There were no other traffic violations noted. As a threshold issue, which if decided in

Mr. Fairfax's favor, is dispositive of the whole case, we maintain the vehicle was not speeding and the traffic stop was illegal. All evidence should be suppressed based on that alone.

Officer Vanfossen himself used the word "pretextual" to describe the basis for his stop. While some pretextual stops have been upheld by our appellate courts [Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769 (1996) and its progeny], this stop appears to have no grounding in any reasonable suspicion of wrongdoing, and wound up subjecting both occupants, especially Mr. Fairfax, to a traffic stop without probable cause, and then to further violations of their Fourth Amendment rights to be free from warrantless searches and an arrest. [Brendlin v California, 551 U.S. 249, 127 S.Ct. 2400 (2007) allows a passenger standing to contest unlawful traffic stops].

## THE SEARCHES AND SEIZURES IN THIS CASE WERE ILLEGAL FOR ADDITIONAL REASONS: THE CHANGE IN MARYLAND LAW

Maryland Law has become increasingly clear and strong that frisks as well as searches of the person are no longer permissible based on the odor of marijuana.

After the 2014 change in our drug laws rendering the possession of less than 10 grams of marijuana as a non-crime and a civil violation only, our Court

of Appeals has issued three successive and very strongly-worded opinions regarding a change in our search and seizure law. These rulings indicate that the odor of marijuana from a vehicle, without more, can justify a search of the vehicle, and only the vehicle, but not of any occupant of the vehicle, nor even a frisk of any occupant.

Before getting to the series of three Court of Appeals decisions, a foundational decision, <u>Robinson v. State</u>, 451 Md 94, (2017) should be considered. It makes clear that the October 1, 2014 change in Maryland Law that rendered possession of less than 10 grams of marijuana no longer a crime, did not change the ability of officers to search a <u>vehicle</u> based on smelling an odor of marijuana.

> [W]e hold that a law enforcement officer has probable cause to search a vehicle where the law enforcement officer detects an odor of marijuana emanating from the vehicle, as marijuana in any amount remains contraband, notwithstanding the decriminalization of possession of less than ten grams of marijuana; and the odor of marijuana gives rise to probable cause to believe that the vehicle contains contraband or evidence of a crime. Applying our holding to the instant cases, we conclude that there was probable cause to search the vehicles in question, based on a law enforcement officer having detected an odor of marijuana coming from a vehicle that Petitioner had been driving or in possession of. Accordingly, we affirm the judgments of the Court of Special Appeals.

*Id*., <u>Robinson</u>, *supra*, at 137, further noting the ruling applied to three separate cases joined on *Certiorari* to the Court of Special Appeals. <u>Robinson</u> was a

unanimous decision authored by Judge Watts of the Court of Appeals of Maryland.

Next came a series of three decisions that have essentially ushered in a change in the search and seizure laws in the State of Maryland, due to the decriminalization of marijuana, and have progressively delineated the new parameters and limits of searches based on the odor of marijuana.


### NORMAN V. STATE, 452 Md. 373 (2017)

The first case in the trilogy was Norman v. State, 452 Md. 373 (2017). This was another opinion by Judge Watts for the majority, where there was a concurring opinion by Judge Adkins in which Chief Judge Barbera joined, and a dissenting opinion by Judge Getty, in which Judge McDonald joined. Essentially it was a 5 to 2 majority opinion upholding the suppression of evidence.

The facts in Norman are laid out at 452 Md. at 380, and are summarized here.

A Maryland State trooper initiated a traffic stop of a vehicle for an in-operable right tail light in Princess Anne County. In addition to there being the driver, the appellant Norman was in the vehicle's front passenger seat and

another passenger was in the backseat. The trooper called for back-up. After approaching the driver, the trooper detected a strong odor of fresh marijuana emanating from the vehicle. At that time, the trooper told the three occupants to exit the vehicle so that he could search the vehicle for marijuana. Before searching the vehicle, however, the trooper frisked all three occupants of the vehicle to look for weapons. The trooper frisked the driver for 30 seconds and did not find any weapons or drugs. He then frisked the Appellant Norman and he felt what seemed like large quantities of some foreign objects in his pants. The trooper further described that it felt what seemed like plastic or cellophane-covered individually packaged bags of drugs in Appellant Norman's pants pocket. The trooper asked Mr. Norman what was in his pants pocket but Norman ignored him and did not reply. The Trooper then testified that he moved Mr. Norman's pants pockets to make sure that what was in his pants was not a weapon. He shook Norman's pants pockets and a bag of marijuana fell onto the ground.

The trooper then frisked the third passenger and did not find any weapons or drugs.

After frisking all three of the vehicle's occupants, the trooper searched the vehicle and found a grinder with traces of marijuana as well as a small amount

of marijuana in the dashboard's center compartment above the gearshift. Lastly, at the station upon another search, the trooper located another bag of marijuana which fell from Mr. Norman's pants.

The opinion first discusses the standard governing the ability of law enforcement to conduct a frisk.

Reasonable articulable suspicion is a commonsense, nontechnical concept that depends on practical aspects of day-to-day life; as such, a court must give due deference to a law enforcement officer's experience and specialized training, which enable the law enforcement officer to make inferences that might elude a civilian. See *id. at 543, 144 A.3d at 781*. That said, although reasonable articulable suspicion is a lesser standard than probable cause, it must be greater than an inchoate and unparticularized suspicion or hunch. See *id. at 543, 144 A.3d at 781*. And, a law enforcement officer may not frisk a defendant simply because the law enforcement officer initiated a lawful traffic stop. See *id. at 545, 144 A.3d at 782*.

A frisk is different from a ***search*** of a person. See *Bailey v. State, 412 Md. 349, 369, 987 A.2d 72, 84 (2010)*. Whereas a ***search*** has the broad purpose of discovering incriminating evidence, a frisk has the limited purpose of discovering weapons. See *id. at 368-69, 987 A.2d at 84*. In *In re David S., 367 Md. 523, 545, 789 A.2d 607, 619 (2002)*, we stated:

> The objective [of a frisk] is to discover weapons readily available to a suspect that may be used against the officer, not to ferret out carefully concealed items that could not be accessed without some difficulty. General exploratory ***searches*** are not permitted, and police officers must distinguish between the need to protect themselves and the desire to uncover incriminating evidence.

(Citation, brackets, and internal quotation marks omitted). In other words, "[t]he officer may not exceed the limited scope of a pat-down for weapons to ***search*** for contraband." *Bailey, 412 Md. at 369, 987 A.2d at 84*.

In *Reid v. State, 428 Md. 289, 297, 51 A.3d 597, 602 (2012)*, we distinguished between an investigatory stop and a frisk, explaining:

> In its landmark decision in *Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)*, the Supreme Court interpreted the *Fourth Amendment* to permit a law enforcement officer to stop an individual that the officer suspected may have been involved in criminal activity. The Court held if an officer has reasonable, articulable suspicion that the suspect was armed, the officer could frisk the individual for weapons. *Id. at 24, 88 S. Ct. at 1881, 20 L.Ed.2d at 907-908*. The Court noted, however, that this exception to the requirement that an officer have probable cause before

conducting a ***search*** was narrowly drawn and limited to frisking only the individual's clothing for weapons. *Id. at 29-30, 88 S. Ct. at 1884-85, 20 L.Ed.2d at 911*.

Norman, 452 Md. at 387-388.   The Court further noted that law enforcement officers may not conduct a pat down of occupants of a vehicle merely because the driver consents to a search of the vehicle. *Id*. at 389.  Citing Sellman v. State, 449 Md. 526, it was noted:

This Court held that a police department policy, under which law enforcement officers could frisk all of a vehicle's occupants in the process of conducting a consent ***search*** of the vehicle, would be unlawful. See *id. at 557, 144 A.3d at 790*. This Court reiterated that a frisk must be supported by reasonable articulable suspicion, and rejected the principle that a law enforcement officer may conduct a frisk "as a matter of routine caution[.]" *Id. at 557-58, 144 A.3d at 790* (citation and internal quotation marks omitted).

*Id.*

Ultimately, the Norman Court held that there was no articulable and reasonable suspicion that Norman was armed or dangerous, despite the strong odor of marijuana pervading the vehicle, and therefore the pat-down of Mr. Norman was illegal, and the seizure of drugs from his person had to be suppressed. The Court's opinion also carefully delineated the difference between a frisk and a search, the latter of which would have to be supported by probable cause, but noted the principal was the same.

Upon careful consideration of relevant case law, including cases from this Court, the Court of Special Appeals, and courts from other jurisdictions, we reaffirm the basic principle that, for a law enforcement officer to frisk, *i.e.*, pat down, an individual, there must be reasonable articulable suspicion that the individual is armed and dangerous, even where a law enforcement officer detects the ***odor*** of ***marijuana*** emanating from a vehicle. We hold that, where an ***odor*** of ***marijuana*** emanates from a vehicle with multiple occupants, a law enforcement officer may frisk an occupant of the vehicle if an

additional circumstance or circumstances give rise to reasonable articulable suspicion that the occupant is armed and dangerous. Stated otherwise, for a law enforcement officer to have reasonable articulable suspicion to frisk one of multiple  occupants of a vehicle from which an **_odor_** of **_marijuana_** is emanating, the totality of circumstances must indicate that the occupant in question is armed and dangerous. An **_odor_** of **_marijuana_** alone emanating from a vehicle with multiple occupants does not give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk.

This Court's holding in _Wallace, 372 Md. at 141, 145 n.2, 812 A.2d at 293-94, 296 n.2_, a case involving a **_search_** and a narcotics dog's alert, is instructive in this case. In _Wallace, id. at 156, 812 A.2d at 302_, this Court held that a narcotics dog's alert to a vehicle in which the defendant was a backseat passenger did not establish probable cause to **_search_** the defendant, as there were no circumstances that would justify a **_search_** that were "specific to" the defendant—for example, the narcotics dog did not sniff and alert to the defendant's person, as opposed to the vehicle. This Court explained: "Without additional facts that would tend to establish [the defendant]'s knowledge and dominion or control over the contraband before his **_search_**, the K-9 sniff of the car was insufficient to establish probable cause for a **_search_** of a non-owner, non-driver  for possession." _Id. at 156, 812 A.2d at 302_.

Just as a narcotics dog's alert to the presence of drugs in a vehicle with multiple occupants, alone, was insufficient to establish probable cause for a **_search_** of the vehicle's passengers in _Wallace_, an **_odor_** of **_marijuana_** emanating from a vehicle with multiple occupants, alone, is insufficient to establish reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and therefore subject to frisk. In _Wallace_, there were no circumstances that indicated that the defendant possessed drugs or was engaged in drug dealing; and, in this case, there are no circumstances that led to the conclusion that Norman was armed and dangerous. By way of example, in both _Wallace_ and in this case, there was no other circumstance present to establish probable cause or reasonable articulable suspicion other than the alert of the narcotics dog or the **_odor_** of **_marijuana_** emanating from the vehicle.

 We readily acknowledge that, unlike in this case, _Wallace, 372 Md. at 145 n.2, 812 A.2d at 296 n.2_, involved a **_search_** rather than a frisk. Thus, in _Wallace_, the applicable standard was probable cause rather than reasonable articulable suspicion. Nonetheless, _Wallace_ is instructive because both _Wallace_ and this case involve applications of a defendant's _Fourth Amendment_ rights "to be secure in their person[], . . . against unreasonable **_searches_**[.]" _U.S. Const. amend. IV_. A person's right to be secure in their person can be violated by either an unreasonable **_search_** or an unreasonable frisk. See _Terry v. Ohio, 392 U.S. 1, 26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)_ (A frisk "constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person."). Indeed, in _Terry, id. at 16-17_, the Supreme Court stated:

> And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a '**_search_**[.]' Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

Norman, *supra*, 452 Md.at 411-413. The Court held that asking the occupants to exit the vehicle to conduct a search of the vehicle is permissible, but without more, that search cannot extend beyond a search of the vehicle.

To be sure, upon detecting an ***odor*** of ***marijuana*** emanating from a vehicle with multiple occupants, a law enforcement officer may ask all of the vehicle's occupants to exit the vehicle; call for backup if necessary; detain the vehicle's occupants for a reasonable period of time to accomplish the ***search*** of the vehicle; and ***search*** the vehicle for contraband and/or evidence of a crime. However, *Terry* has never been construed to authorize a routine frisk of every person in a vehicle without reasonable articulable suspicion that the person is armed and dangerous.

*Id*. at 425.

## PACHECO v. STATE, 465 Md. 311 (2019).

The next two Court of Appeals decisions, Pacheco, *supra*, and Lewis v. State, 2020 Md. LEXIS 348, (July 27, 2020), discussed *infra*, were both unanimous opinions authored by Chief Judge Barbera. They carve out new limitations on the ability of police to conduct searches based on detecting the smell of marijuana, even when police actually see a small amount of marijuana in plain view (Pacheco).

Judge Barbera begins the Court's opinion in Pacheco thus:

"The Times they are-a-changin'" ---Bob Dylan, *The Times They Are-a-Changin'*

<u>Pacheco</u>, 465 Md. at 317.  Her Honor then declares:

Presented in this case is a question of first impression. That question, as framed in the brief of Petitioner Michael Pacheco, is

> whether police are authorized to arrest a person for the criminal offenses of possession of more than ten grams of marijuana and/or possession of marijuana with intent to distribute, based solely on facts indicating that the person is committing the civil offense of possession of less than ten grams of marijuana.

For reasons that follow, we answer that question in the negative.

*Id*.

The case arose out of Montgomery County and the facts are laid out at 465 Md. 317-318: Two Montgomery County police officers spotted a suspicious vehicle at 10 pm parked in a dark area behind an open laundromat, where the car windows were down, and located nowhere near the open business. The two officers approached, and both testified to smelling the odor of burnt marijuana. They saw Mr. Pacheco alone in the car sitting in the driver's seat. One of the officers saw a joint in the center console in plain view on his approach to the vehicle. The officer had Mr. Pacheco hand him the joint, which he knew to be marijuana, all be it less than ten grams in weight. The officers ordered Mr. Pacheco out of the vehicle and searched him. They found cocaine in his pocket and it was enough in quantity to warrant a charge of Possession with Intent to Distribute Cocaine.  *Id*.

16

Judge Marielsa Bernard denied the motion to suppress, finding there was probable cause to search and arrest Pacheco based on the finding of the small amount of marijuana. *Id*., at 318-319. Mr. Pacheco entered a conditional guilty plea to the cocaine charge and appealed to the Court of Special Appeals, which relied "predominantly on pre-decriminalization cases" and affirmed her Honor's suppression ruling, and the conviction. *Id*., at 319. *Certiorari* was granted for review by the Court of Appeals.

The Fourth Amendment analysis of the Court of Appeals involved two exceptions to the warrant requirement, the automobile exception or Carroll doctrine, and the search incident to arrest exception.

Although warrantless searches and seizures are "presumptively unreasonable," *Henderson v. State, [*321] 416 Md. 125, 148, 5 A.3d 1072 (2010)*, they may be deemed reasonable if the circumstances fall within "a few specifically established and well-delineated exceptions." *Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)*.   Whether a particular warrantless action on the part of the police is "reasonable" under the *Fourth Amendment* "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977)* (quoting *United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975)*. "In some circumstances, such as '[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the [Supreme] Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.'" *King, 569 U.S. at 447* (quoting *Illinois v. McArthur, 531 U.S. 326, 330, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001)*. It is the State's burden to prove the legality of a warrantless search. *Holt v. State, 435 Md. 443, 459, 78 A.3d 415 (2013)*.

This case gives rise to consideration of two exceptions to the warrant requirement of the *Fourth Amendment*: the so-called "automobile exception" announced in *Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, T.D. 3686 (1925)*, and the search incident to arrest exception announced in *Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)*. *The Automobile Exception*

*Carroll* and its progeny authorize the warrantless search of a vehicle if, at the time of the search, the police have developed "probable cause to believe the vehicle contains contraband or evidence of a crime." *Johnson, 458 Md. at 533* (citing *United States v. Ross, 456 U.S. 798, 799, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982))*; *see also California v. Carney, 471 U.S. 386, 391, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985)* (stating that "[b]esides the element of mobility, less rigorous warrant requirements govern [auto-mobile searches] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office"). **The automobile doctrine permits the search of "every part of the vehicle and its contents that may conceal the object of the search**." *Wyoming v. Houghton, 526 U.S. 295, 301, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999)* (quoting *Ross, 456 U.S. at 825*). The search, however, "extends no further than the automobile itself." *Collins v. Virginia,      U.S.    , 138 S. Ct. 1663, 1671, 201 L. Ed. 2d 9 (2018)*. "Expanding the scope of the automobile exception [beyond the vehicle] would both undervalue the core *Fourth Amendment* protection afforded to the home and its curtilage and 'untether' the automobile exception 'from the justifications underlying' it." *Id.* (quoting *Riley v. California, 573 U.S. 373, 386, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014))*.

*Id.*, at 321-322, emphasis supplied. The highlighted language would seem to support the legality of the search of Mr. Fairfax's backpack. As will be seen from the <u>Lewis</u> opinion discussed *infra*, however, if that backpack is deemed part of Mr. Fairfax's person, then it is not subject to search in this case. More on this point later.

The probable cause standards for the automobile exception and the search incident to arrest exception are applied differently.

The authorization for and permitted scope of the search at issue is tied directly to the justification(s) for it. In that sense, the probable cause determinations for the automobile exception and the search incident to lawful arrest exception are not "in all respects identical." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), 7 (5th ed. 2012) [hereinafter "LaFave"]. Although the probable cause determination for each of these exceptions requires the same "quantum of evidence," "[e]ach requires a showing of probabilities as to somewhat different facts and circumstances—a point seldom made explicit in the appellate cases." *Id.* "This distinction is a critical one, . . . . [and] there may be probable cause to search without probable cause to arrest, and vice-versa." *Id. at 12*; *see, e.g., Butler v. United States, 102 A.3d 736, 741 (D.C. 2014)* (noting that, prior to the legalization of marijuana in Washington D.C., "the smell of marijuana 'generally' emanating from appellant's vehicle . . . indisputably would allow the police to search the *vehicle*," but the court had

"reservations" about whether the driver's *arrest* could have been upheld without the additional facts that the defendant "was the sole occupant of the vehicle" and "the aroma was of *fresh* marijuana.").

When determining whether probable cause exists for purposes of the automobile exception, courts ask whether "there is probable cause to believe the vehicle contains contraband or evidence of a crime." *Johnson, 458 Md. at 533* (citing *Ross, 456 U.S. at 799*). However, before a person can be lawfully arrested and searched incident thereto the focus must be on the likelihood of the "guilt of the arrestee," LaFave at 9, and asks whether "there is probable cause to believe that the individual has committed either a felony or a misdemeanor in an officer's presence." *Donaldson, 416 Md. at 480*; *see also United States v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004)* ("In the search context, the question is whether the totality of circumstances is sufficient to warrant a reasonable person to believe that contraband or evidence of a crime will be found in a particular place. Whereas in the arrest context, the question is whether the totality of the circumstances indicate to a reasonable person that a 'suspect has committed, is committing, or is about to commit' a crime.") (citations omitted).

The distinction between the two exceptions is at least in part due to the diminished expectation of privacy that justifies the automobile exception, *Carney, 471 U.S. at 390-92*, as compared to the "unique, significantly heightened" constitutional protections afforded a person to be secure in his or her body, *Houghton, 526 U.S. at 303*. Stated differently,

> [p]robable cause to believe that a person is carrying evidence does not justify a warrantless search of the person any more than probable cause to believe a home contains evidence justifies a warrantless search of a home. Only places or things enjoying a lesser expectation of privacy, such as automobiles, are vulnerable to probable-cause-based warrantless searches for the purpose of discovering and seizing evidence of crime.

*State v. Funkhouser, 140 Md. App. 696, 724, 782 A.2d 387 (2001)*. The Supreme Court, in *Terry v. Ohio, 392 U.S. 1, 25, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)*, emphasized the significant level of intrusion upon a person that is a "search incident to an arrest," in comparing that intrusion to the lesser intrusion upon the person that is a "pat down."

*Id.*, 324-326.

The final part of the legal landscape deals with the sequence of events.

The Supreme Court has long held that a search incident to a lawful arrest is permissible only if the underlying arrest is lawful. *See Pringle, 540 U.S. at 371* ("To determine whether an officer had probable cause to arrest an individual, we examine the events *leading up* to the arrest, and then decide 'whether these historical facts, viewed from the stand-point of an objectively reasonable police officer, amount to' probable cause.") (emphasis added) (quoting *Ornelas v. United States, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)*; *Smith v. Ohio, 494 U.S. 541, 543, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990)* ("As we have had occasion in the past to observe, '[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification.'") (quoting *Sibron v. New York, 392 U.S. 40, 63, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)*); *Bailey v. State, 412 Md. 349, 375, 987 A.2d 72 (2010)* ("In the case of a search incident to arrest, the State must show that probable cause supported a lawful arrest before the officer conducted the search."); *see also Rawlings, 448 U.S. at*

*111* (stating that the search can occur either before or after the arrest so long as probable cause exists for the arrest at the time of the search).

*Id*.at 331.

Applying these principles, the <u>Pacheco</u> Court concluded that the suppression should have been granted, and it reversed the ruling in the Court of Special Appeals, with instructions to reverse and remand to the Circuit Court for Montgomery County to grant the Motion to Suppress. *Id.* at 334. The Court noted the "heightened expectation of privacy one enjoys in his or her person as compared to the diminished expectation of privacy one has in an automobile. *Id*. at 333. It reasoned that there was nothing in the finding of the marijuana joint in the console, combined with the smell of marijuana, that gave rise to a fair probability that Mr. Pacheco possessed a criminal amount of marijuana or that he was committing or about to commit a crime in their presence. *Id*. The search was therefore ruled unjustified and illegal. *Id*.

<u>LEWIS V. STATE, 2020 Md. LEXIS 348, 470 Md. 1, (July 27, 2020).</u>

In this very recent and unanimous decision of the Court of Appeals, again authored by Chief Judge Barbera, the <u>Pacheco</u> analysis and holding is applied to a situation not involving a traffic stop and vehicle search or the automobile

exception. It is a decision that has again evolved from the decriminalization of less than 10 grams of marijuana, and is strictly based on new parameters and limits on a search incident to arrest and probable cause.

Baltimore City police received a tip about an armed individual which led five officers to enter a convenience store, where marijuana was often distributed according to one of the officers. *Lewis*, *supra* at pp. 3-4. As Lewis passed "literally right in front of" one Officer Burch, the officer testified he smelled the odor of marijuana emitting from his person. *Id*. at 4. Lewis had a red bag strapped across his chest. *Id.*, at 4-5. The officer testified he reached out and stopped Mr. Lewis based on the smell of marijuana and the possible matching of the description in the tip about the armed individual. *Id.* at 5. As he was grabbing Lewis, the officer was then assisted by five other officers. *Id*. Apparently, Mr. Lewis had to be told to calm down as he was being handcuffed. *Id*. at 6. A full search was then undertaken. *Id*. The officer first searched the red bag and found a handgun inside. *Id*. Additionally, marijuana was found in Lewis' pockets, along with  empty plastic baggies and $367. *Id.*

The suppression court determined that the tip about the armed individual lacked sufficient reliability to justify the initial stop of Lewis, but justified the stop and search of the red bag, based solely on the odor of marijuana. *Id.* at 7-8.

The Court reasoned that the smell of marijuana gave police probable cause to arrest Lewis and search his bag and his person. *Id*. at 8.

The defense motion to suppress was denied. *Id*. Mr. Lewis pled not guilty on an agreed statement of facts to wear, carry and transporting a handgun, was found guilty, sentenced, and appealed to the Court of Special Appeals, which upheld the stop, search and arrest. *Id* at 9. On grant of c*ertiorari*, the Court of Appeals reversed the Court of Special Appeals, with instructions to reverse the Judgment of the Circuit Court for Baltimore City and grant the Motion to Suppress. *Id*. at 29.

Distinguishing the case from <u>Robinson</u>, discussed *supra*, the Court found that <u>Pacheco</u> was controlling as this was not grounded in the automobile exception, but rather the search incident exception. *Id.* at 13.

 The prerequisite to a lawful search of a person incident to arrest is that the police have probable cause to believe the person subject to arrest has committed a felony or is committing a felony or misdemeanor in the presence of the police. *Pacheco, 465 Md. at 323* (citing *Maryland v. Pringle, 540 U.S. 366, 369-70, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003))*. "Because the search is premised on probable cause to make the arrest, the first question to be considered whenever such a search has been conducted is whether the police had the requisite probable cause *before* conducting the search." *Id.* (citing *Donaldson v. State, 416 Md. 467, 481, 7 A.3d 84 (2010))*. The justifications underpinning the search incident to arrest exception include the confiscation of weapons potentially used to resist arrest, escape custody, or endanger police officers' safety, and the seizure of evidence "to prevent its concealment or destruction." *Riley v. California, 573 U.S. 373, 383, 134 S. Ct. 2473, 2483, 189 L. Ed. 2d 430 (2014)* (internal quotation omitted).

*Id*. at 18. The Court further explained:

*Pacheco* guides us in deciding that police officers must have probable cause to believe a person

possesses a *criminal amount* of marijuana in order to arrest that person and conduct a search incident thereto. Although marijuana in any quantity is considered contraband, *Robinson, 451 Md. at 99*, the search incident to arrest exception can be invoked only upon the occurrence of a felony or attempt of a felony or misdemeanor; a civil infraction is neither a felony nor a misdemeanor. The odor of marijuana alone is not indicative of the quantity (if any) of marijuana in someone's possession, a fact to which Officer Burch testified.

*Id*. at 22-23.

Despite the reversal of the decision of the Court of Special Appeals in this case, which was decided before the <u>Pacheco</u> decision was released, Judge Barbera's opinion notes with agreement the litany of concerns attendant to officers' claims of smelling the odor of marijuana, as expressed in Judge Arthur's concurrence in the Court of Special Appeals ruling:

> [I]f the mere odor of burnt marijuana on a citizen's breath gives the police probable cause to make an arrest, it would seem to follow that the odor of marijuana smoke on a person's clothes or hair would give probable cause as well. If so, it is not difficult to imagine scenarios in which police officers would have probable cause to arrest and search someone whose only exposure to marijuana is from second-hand smoke—e.g., someone who was standing inside a bus enclosure in the rain while others smoked marijuana; someone whose family members or housemates smoke marijuana; someone who borrowed a piece of clothing or outerwear from an acquaintance who smokes marijuana; someone who just came from a concert at which members of the audience were smoking marijuana; etc. In fact, the officers would have probable cause to arrest and search someone who got off a bus or subway train in Maryland after smoking marijuana in the District of Columbia, where the private use and possession of up to two ounces has been *legalized* (and not merely decriminalized). D.C. Stat. Ann. *§ 48-904.01(a)(1)* (West 2018). I would have thought that the reform of Maryland's marijuana laws was intended to reduce rather than facilitate intrusive searches in circumstances such as these.

*Lewis, 237 Md. App. at 691* (Arthur, J., concurring).

*Id*. at 17. Moreover, Judge Nazarian in his dissenting opinion noted that "[t]here

is no way to challenge or verify what the officer smelled, no way to test whether a person actually smelled of marijuana,… and no way to control for the fully legal and otherwise non-criminal or second-hand ways someone could come to smell like marijuana", <u>Lewis</u>, 237 Md. App. at 703.

Again comparing the diminished expectation of privacy attendant in a vehicle search which was at issue in <u>Robinson,</u> *supra*, Judge Barbera's opinion strongly notes the distinction that applies when a human being is arrested and searched.

> As explained above, one of the justifications for the automobile exception is the diminished expectation of privacy one enjoys in his or her vehicle. In juxtaposition, there is a heightened expectation of privacy enjoyed in one's person. Arresting and searching a person, without a warrant and based exclusively on the odor of marijuana on that person's body or breath, is unreasonable and does violence to the fundamental privacy expectation in one's body; the same concerns do not attend the search of a vehicle. *See* *Pacheco, 465 Md. at 326* (remarking that probable cause "to believe that a person is carrying evidence does not justify a warrantless search of a person . . . . Only places or things enjoying a lesser expectation of privacy . . . are vulnerable to probable-cause-based warrantless searches for the purpose of discovering and seizing evidence of a crime.") (quoting *Funkhouser, 140 Md. App. at 724*).

*Id*. at 26-27.

Judge Barbera concludes in unequivocal terms that the search of <u>Lewis</u> and the red bag strapped across his chest was unlawful.

> The search of Petitioner and the red bag strapped across his chest was based solely on the odor of marijuana emanating from his person. Under *Pacheco*, that information fell short of supplying the requisite probable cause to conduct that search. *Id.*

*Id*. 27-28. Explaining further she noted:

The *Fourth Amendment's* protection against unreasonable searches and seizures prohibits law enforcement officers from arresting and searching a person without a warrant based solely upon the odor of marijuana on or about that person. Probable cause to conduct a lawful arrest requires that the arrestee committed a felony or was committing a felony or misdemeanor in a law enforcement officer's presence. Possession of less than ten grams of marijuana is a civil offense, not a felony or a misdemeanor, therefore law enforcement officers need probable cause to believe the arrestee is in possession of a criminal amount of marijuana to conduct a lawful arrest. The odor of marijuana alone does not indicate the quantity, if any, of marijuana in someone's possession.

*Id*. at 28-29.

## THE TRAFFIC STOP IN THIS CASE WAS NOT SUPPORTED BY PROBABLE CAUSE TO BELIEVE A TRAFFIC OFFENSE HAD OCCURRED.

At the outset, we contest the traffic stop here, based on the contention that the vehicle was not committing a traffic offense. The State has the burden of production and proof on this point. Our contention is based on viewing the dash cam showing the pursuit of the vehicle. As set forth above, the vehicle was initially traveling in a 30 mph zone and was clocked by the roadside speed monitor on Maryland Avenue in Rockville, as going 29 and 30 mph. This was prior to the officer's emergency lights going on, after which the vehicle slowed down even further to less than 29 and 30 mph.

If there was no probable cause for the traffic stop, the inquiry ends, and all the ensuing gathering of the evidence, physical and verbal, is the fruit of the poisonous tree, [Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1963)], and must therefore be suppressed.

Under the Supreme Court's holding in <u>Brendlin v. California</u>, 551 U.S. 249, 127 S.Ct. 2400 (2007), Mr. Fairfax, though a passenger, has a right to assert standing and challenge the stop, which he hereby does, and asserts the stop was illegal, and all subsequent evidence flowing therefrom was tainted, and should be suppressed.

<u>THE PURPORTED SMELL OF MARIJUANA WAS DUBIOUS AS NONE WAS FOUND ANYWHERE IN THIS CASE AND CONSTITUTED AN ULAWFUL JUSTIFICATION TO SEARCH THE VEHICLE AND MR. FAIRFAX AND ILLEGALLY SEIZE EVIDENCE.</u>

As set forth under "Factual Background", the purported odor of marijuana was used to justify the initial demand that both Ms. Dillard the driver, and Mr. Fairfax, the passenger, exit the vehicle so it could be searched. Not a flake or seed of marijuana was recovered in this case. As Judge Nazarian pointed out in his dissent in the Court of Special Appeals in <u>Lewis</u>, *supra*,  "[t]here is no way to challenge or verify what the officer smelled, no way to test whether a person actually smelled of marijuana,… and no way to control for the fully legal and otherwise non-criminal or second-hand ways someone could come to smell like marijuana", <u>Lewis</u>, 237 Md. App. at 703.

Officer Vanfossen put it best, "It's called a pretextual stop". Not only is the traffic stop of dubious legality, but the claim of the smell of marijuana, is

also dubious and belied by the absence of any trace of marijuana found in this case. We contest it and challenge it, and assert the smell did not exist. "It is the State's burden to prove the legality of a warrantless search." *Holt v. State, 435 Md. 443, 459, 78 A.3d 415 (2013)*.

If the odor of marijuana is not sufficiently proven to the motions court's satisfaction, then asking the occupants to exit the vehicle in this case, and all ensuing searches, frisks, arrests and seizures of evidence,  are the tainted fruit of those legally groundless actions and must be suppressed.

EVEN IF THE COURT FINDS THE TRAFFIC STOP VALID, AND THE SMELL OF MARIJUANA IN THIS PARTICULAR CASE TO BE PRESENT ENOUGH TO JUSTIFY A SEARCH OF THE VEHICLE, THE SEARCH OF MR. FAIRFAX AND HIS BAG WAS NOT SUPPORTED BY REASONABLE SUSPICION OF HIS BEING ARMED AND DANGEROUS, OR BY PROBABLE CAUSE TO BELIEVE HE WAS COMMITTING A CRIME IN THE PRESENCE OR VIEW OF THE POLICE.

Robinson, *supra*, makes clear, if the odor of marijuana is detected by police in a traffic stop, the occupants can be asked to exit the vehicle and the vehicle can be searched.

Norman, *supra*, makes clear, if the odor of marijuana is detected by police in a traffic stop, the occupants can be asked to exit the vehicle, so that the vehicle can be searched, but the occupants cannot be frisked, absent any additional

evidence that gives the officers reasonable suspicion that one or more occupants may be armed and dangerous.

Pacheco, *supra*, makes clear, that if the odor of marijuana is detected by police in a car they are approaching, and even if the police see and seize a small [less than 10 gram] quantity of marijuana in plain view in the vehicle, they can search the vehicle, but they cannot arrest the occupant for a crime, and adding from Norman, *supra*, they cannot even frisk the occupant, unless additional evidence is present to indicate he is armed and dangerous.

Lewis, *supra*, makes clear, that if the police encounter someone who is in possession of a container, such as a red bag strapped across his chest, and they smell the strong odor of marijuana emanating directly and exclusively from that individual or on or about his person, they cannot arrest him, because they have no probable cause to believe a crime has been committed in their presence or view. Adding Norman, *supra*, to the analysis, they cannot even pat him down, unless they have additional evidence to indicate, he is armed and dangerous.

Yes, the times they are a changin'!

In Mr. Fairfax's case, even if we get past the issue of the stop for speeding,

28

and further if we get past the issue of the existence of the smell of marijuana, we have a case that is fully in line with the aforementioned line of recent Court of Appeals decisions regarding the limits of police action when detecting the odor of marijuana. Factually, our case rests on one factual determination this Court has to make at the hearing on the Motion to Suppress the evidence we are seeking.

Was the backpack in Mr. Fairfax's possession, a container that was merely a content of the vehicle, or was it part of Mr. Fairfax's person, as was the red bag strapped across the Appellant's chest in Lewis, *supra*? The State will assuredly argue that Robinson, *supra*, applies to this case and that the backpack's seizure and inspection by the police would be authorized. Their argument will likely be that there is a diminished expectation of privacy in any container found to have been in the vehicle under such circumstances. Further, its search does not intrude on the sanctity of a person.

On the other hand, we posit, that the backpack is in the actual physical control of Mr. Fairfax, the whole time, and he continues to maintain dominion and control over it upon being asked to exit the vehicle. Our contention is that he has an enhanced expectation of privacy in the item, because it is part of his

person. It is not subject to being searched, absent additional evidence that indicates a reasonable suspicion that he is armed and dangerous; or absent probable cause he is committing a crime (i.e., possession of more than 10 grams of marijuana, driving under the influence of drugs, or any other felony or misdemeanor within the officer's presence or view).

When Mr. Fairfax exited the vehicle, what if a fanny pack was being worn around his waist ? Norman, *supra*, informs us in such a case, that his pockets cannot be searched or even frisked, merely based on the odor of marijuana. Pacheco, *supra*, indicates he cannot be arrested and searched based on probable cause to believe a crime was committed. Lewis, *supra*, holds that even in the face of a clearly directed smell of marijuana coming from his person with a bag strapped to his chest, neither the person, or the bag he is wearing, can be frisked or searched.

This Court must evaluate the totality of circumstances attendant to this situation, to determine factually, whether this backpack was part of Mr. Fairfax's person, as was the red bag in Lewis, *supra,* or part of the car. The State will argue it's part of the car and subject to search.

We urge this Court to find differently. This incident was a fishing

expedition by the police. Remember, the roadside speed monitor on Maryland Avenue flashed 29 and 30 mph, neither of which is over the speed limit. Secondly, where's the marijuana? It does not exist! Thirdly, the backpack was right at the feet of Mr. Fairfax when he was seated in the front passenger seat, and then he relocated it to his lap. When asked to exit, he got out with it and had it in his physical possession the entire time. He was asked to leave it in the car and he did not and continued walking where he was directed, to the front of the car, and he simultaneously placed it on his back. He repeatedly said it was his bag and he wanted to keep it with him and he immediately started putting it on his back as he walked away from the car. It's a backpack that is supposed to be worn on one's back, but obviously one would not be comfortable riding in a car that way, so while he was riding in the car, Mr. Fairfax had it right down at his feet. This backpack was no less in his possession and part of his person than a fanny pack would be, or the red bag strapped across Appellant <u>Lewis</u>' chest.

Officer Sadelson repeatedly told Ms. Dillard and Mr. Fairfax that the police were going to search each of them as well as the car, because the officers supposedly smelled marijuana in the car. The police had every intention to conduct a search of both occupants, including a frisk, both of which actions are

proscribed by the holdings in <u>Norman</u>, <u>Pacheco</u> and <u>Lewis</u>, *supra*.

There is nothing in the facts prior to Mr. Fairfax being pounced on and tackled and his backpack searched, to indicate Mr. Fairfax was armed and dangerous that would warrant a frisk. There is nothing to indicate that the backpack smelled of marijuana, rather,  it was the car that allegedly smelled of marijuana, even per officer Sadelson who claimed he smelled marijuana in the car while wearing a mask.

When driver Alexis Dillard started to walk away she was stopped and officer   Vanfossen   said   she   was   not   free   to   leave. That is the functional equivalent of an arrest, but on what probable cause?

While the car was being searched, Ms. Dillard was being frisked by a female Rockville officer. Based on what? What is the reasonable and articulable suspicion she was armed and dangerous? When the two officers were speaking with Mr. Fairfax, and told him to take the backpack off, and he protested, the officer said, "We're searching you and the bag". Based on what? The case law indicates they are not allowed to search him or the bag unless they had probable cause to believe he committed or was committing a crime. He was questioning the police at that point about why they wanted to search him, but he had not

committed a misdemeanor or felony within their presence or view. There was also no evidence or reasonable suspicion he was armed and dangerous to even warrant a pat down.

Vanfossen said "It's called a pretextual stop", which does not inform anyone of anything significant or provide a justification for searching the bag. It does, however, indicate a police motive to conduct a questionnable traffic stop when the officer was really trying to engage in a drug investigation with no evidence. The evidence was there were two African American occupants of a vehicle being driven at 11 pm with valid North Carolina tags, by a driver with a valid license, and no open warrants, and traveling in a reasonable fashion with no apparent, legitimate motor vehicle violations having been committed.

When the officers asked Mr. Fairfax to remove his backpack off his back to search it, they had no probable cause to search it. He was not under arrest and there was no probable cause to arrest him. Since he has the right to privacy and security and freedom from unlawful searches of his person and a backpack attached to his person, there was no basis to search and no basis to detain him against his will. He should have been free to leave. When he tried to leave, he was pounced upon. His leaving was lawful in that in Maryland there exists "the

33

long-recognized privilege to resist an unlawful warrantless arrest", <u>Arthur v. State</u>, 420 Md. 512, 525, 24 A.3d 667, 675 (2011). Such a forcible seizure of Mr. Fairfax's person by three officers tackling him to the ground, pouncing on him, and handcuffing him, certainly constitutes an arrest. It is also just as certain that there was no probable cause for that arrest. As set forth above, however,

[A]s we have had occasion in the past to observe, '[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification.'") (quoting *Sibron v. New York, 392 U.S. 40, 63, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968))*; *Bailey v. State, 412 Md. 349, 375, 987 A.2d 72 (2010)* ("In the case of a search incident to arrest, the State must show that probable cause supported a lawful arrest before the officer conducted the search."); *see also Rawlings, 448 U.S. at 111* (stating that the search can occur either before or after the arrest so long as probable cause exists for the arrest at the time of the search).

<u>Lewis</u>, *supra*, at 26-27. No probable cause for criminal activity, nor reasonable suspicion of Mr. Fairfax being armed and dangerous, existed for this violent arrest, search and seizure, and the fruits of that illegal search must be suppressed.

<u>CONCLUSION</u>

For all the foregoing reasons, and those additional reasons and evidence to be adduced at the hearing that is being requested on this Motion, currently scheduled to be heard October 22, 2020 at 9 am, it is respectfully requested that this Court grant a suppression of the evidence in this case.

Respectfully submitted,

_____

James N. Papirmeister, Esq.
Law Offices of James N. Papirmeister, P.C.
8630 Fenton Street, Suite 320
Silver Spring, Maryland 20910
Office (301) 589-2100; Cell (301) 367-6500
Email: criminalfirm@yahoo.com
CPF # 860-601-0297

### CERTIFICATE OF SERVICE

I certify that I personally emailed the foregoing Motion to Suppress Evidence and Request for a Hearing to Assistant State's Attorney Karyn McAuliffe at karyn.mcauliffe@montgomerycountymd.gov on October 12, 2020.

_____
James N. Papirmeister, Esq.

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

STATE OF MARYLAND                          :

       vs.                                   :          Case No. 137394-C

TREVON A. FAIRFAX                          :

  Defendant                              :

## **ORDER FOR HEARING ON MOTION TO SUPPRESS EVIDENCE**

      UPON CONSIDERATION of the foregoing Motion to Suppress Evidence & Memorandum Of Law: [Request For Hearing October 22, 2020 9:30 Am], it is thereupon this _____day of _____, 2020 hereby,

      ORDERED, that the above case be set down for a two hour hearing on Motion to Suppress Evidence on _____ _____.

_____
HONORABLE CIRCUIT COURT JUDGE